UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:12-CR-124-2 |
| | ) | (VARLAN/SHIRLEY) |
| TINA MCFALL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter came before the Court for sentencing on August 13, 2013. The Court heard testimony and argument from counsel regarding the defendant's Guidelines calculation, the sentencing factors, and the government's motions. The Court also heard the defendant's allocution. The Court found it appropriate to recess to consider the evidence, arguments, and relevant law. Having done so, the Court issues the following determinations concerning the defendant's advisory Guidelines calculation. The Court will address the sentencing factors and the government's motion for downward departure at the conclusion of the sentencing hearing, which is set for Monday, August 26, 2013, at 3:30 p.m.

**I.    Section 2X3.1(a)(1): Offense Level for the Underlying Offense**

Subdivision (a)(1) of § 2X3.1 of the Guidelines provides that the base offense level for an accessory after the fact offense is "6 levels lower than the offense level for the underlying offense." U.S. Sentencing Guidelines Manual § 2X3.1(a)(1) (2012). The

application notes explain that "'underlying offense' means the offense as to which the defendant is convicted of being an accessory." *Id.* cmt. n.1. In determining the offense level for the underlying offense, the sentencing court is to "[a]pply the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant," cross referencing Application Note 10 to § 1B1.3 (Relevant Conduct). *Id.* Application Note 10 of § 1B1.3, in turn, provides: "In the case of . . . accessory after the fact, the conduct for which the defendant is accountable includes all conduct relevant to determining the offense level for the underlying offense that was known, or reasonably should have been known, by the defendant." U.S. Sentencing Guidelines Manual § 1B1.3 cmt. n.10 (2012).

Here, defendant Tina McFall has been convicted of harboring a fugitive, Darrell Ray, her co-defendant [Doc. 33]. Mr. Ray was convicted on four counts of being a felon in possession of a firearm. Mr. Ray was sentenced on July 19, 2013. His applicable Guideline was § 2K2.1, and his base offense level was 24 because he committed the offenses subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense. *See* U.S. Sentencing Guidelines Manual § 2K2.1(a)(2) (2012). Had he not done so, his base offense level would have been 14, and the parties do not dispute this. The parties also agree that in assessing the defendant's base offense level under § 2X3.1, the Court must determine whether the defendant knew or reasonably should have known that Mr. Ray committed his felon in possession offenses subsequent to sustaining at least two felony convictions of either a crime of

violence or a controlled substance offense. They dispute whether the defendant had such knowledge or reasonably should have had such knowledge.

After hearing testimony and argument from counsel on this issue on August 13, the Court recessed so that it could take a closer look at the parties' positions and the law. At one point during the course of this litigation [*see* Docs. 70, 83], the government was relying upon *United States v. Godwin*, in which the Fourth Circuit concluded that "if the underlying offense for purposes of applying the accessory-after-the-fact guideline is a violation of 18 U.S.C. § 922(g), the base offense level for the underlying offense should not be enhanced based on the criminal record of the 922(g) offender." 253 F.3d 784, 789 (4th Cir. 2001). Relying on the Sixth Circuit opinion *United States v. Hendrick*, 177 F.3d 547 (6th Cir. 1999), the Fourth Circuit reasoned that because § 2X3.1 requires the court to use the offense level for the underlying offense, as opposed to the offense level for the principal offender, it would not be "proper to use the base offense level assigned to the fugitive by virtue of the fugitive's criminal history when determining the base offense level for the defendant who harbors the fugitive." *Id.* at 787.

The government retracted from its reliance on *Godwin* after the PSR was revised to reflect the United States Sentencing Commission's approach to calculation of the base offense level under § 2X3.1, which is that the base offense level should be calculated using the fugitive's prior record that the defendant knew or reasonably should have known about, asserting that the Sentencing Commission's approach is more consistent with the language and purpose of § 2X3.1. It also now claims the Fourth Circuit's
3

reliance on *Hendrick* to conclude that the fugitive's criminal history is not relevant to the calculation of the harborer's offense level is misplaced because *Hendrick* involved application of § 2X2.1 to a defendant who aided and abetted a violation of 18 U.S.C. § 922(g). Aiding and abetting, according to the government, is different from harboring a fugitive because the seriousness of the conduct of a harborer is primarily based upon the dangerousness of the fugitive and the aider and abettor's conduct is based on his own involvement in the underlying offense.

The Court need not address *Godwin* and its applicability here, however, because the Court has conducted additional research on the matter and located an unpublished opinion from within the Sixth Circuit that is directly on point: *United States v. Crawford*, 281 F. App'x 444 (6th Cir. June 9, 2008).[1] In *Crawford*, the defendant was convicted of obstructing the prosecution of Eric Holley for possessing a firearm after having been convicted of a felony, among other things. 281 F. App'x at 450. The district court utilized § 2X3.1, pursuant to § 2J1.2, in determining the defendant's base offense level. *Id.* In doing so, the district court looked to § 2K2.1, the applicable Guideline for Holley's conduct. *Id.* Because Holley had two prior convictions for violent felonies, the district court found the applicable base offense level for Holley's offense was 24. *Id.* Relying on *United States v. Shabazz*, 263 F.3d 603 (6th Cir. 2001), the defendant argued that there

---

[1] Although unpublished, the decision is still persuasive authority. *See Hood v. Keller*, 229 F. App'x 393, 398 n.5 (6th Cir. 2007) (unpublished decisions of this Court "may constitute persuasive authority especially where there are no published decisions which will serve as well" (citation and internal quotation marks omitted)).

4

was no evidence establishing that he knew or reasonably should have known that Holley had twice been convicted of violent felonies, so the district court incorrectly used 24 as the underlying base offense level. *Id.* Indeed, this argument is akin to the arguments the parties present here.

The Sixth Circuit disagreed, finding the defendant's reliance on *Shabazz* "misplaced." *Id.* "The issue in *Shabazz* was whether, in calculating the offense level for obstruction of justice, the district court could use the offense level, including enhancements, for the offense whose investigation or prosecution the defendant had obstructed, without first finding the defendant knew or reasonably should have known of the facts supporting those enhancements." *Id.* The Sixth Circuit determined "that a finding of such knowledge was required," relying on Application Note 1 to § 2X3.1 and Application Note 10 to § 1B1.3. *Id.* at 450–51.

The issue in *Crawford*, however, was "Crawford's insistence that the sentencing court could not use Holley's base offense level of 24 to calculate Crawford's offense level because Crawford did not have the requisite knowledge of Holley's prior felony convictions." *Id.* at 451. The court determined that "Holley's prior felony convictions [were] intrinsic to the underlying offense itself; . . . not comparable to facts upon which enhancements may be based." *Id.* Further, the court determined that the prior convictions were not "'specific offense characteristics' to which Application Note 1 is limited" and that "Application Note 10 does 'not say that . . . accountability is *limited* to conduct known or reasonably known; it merely states that . . . accountability *includes*

5

conduct known or that reasonably should have been known.'" *Id.* (alterations in original and internal quotation marks omitted) (quoting *United States v. Giradi*, 62 F.3d 943, 946 (7th Cir. 1995)). It thus found the district court correctly used 24 as the underlying base offense level.

Following *Crawford*, and despite the parties' arguments regarding the defendant's knowledge of Mr. Ray's criminal history, the Court finds the defendant's knowledge of Mr. Ray's criminal history is irrelevant and that the offense level for the underlying offense under § 2X3.1(a)(1) is 24.

## II. Section 2X3.1 Application Note 1: Specific Offender Characteristics

Having determined the underlying base offense level, the Court must determine if the defendant knew or reasonably should have known about any of Mr. Ray's specific offense characteristics. *See* U.S. Sentencing Guidelines Manual § 2X3.1 cmt. n.1. If so, the underlying base offense will be adjusted by the corresponding level increase. The government asserts that the defendant knew or reasonably should have known that (1) Mr. Ray possessed at least three firearms, warranting an upward two-level adjustment under § 2K2.1(b)(1)(A), and (2) that Mr. Ray used the firearms in connection with at least one felony offense, warranting an upward four-level adjustment under § 2K2.1(b)(6)(B).[2]

---

[2] The government had asserted that the defendant knew or reasonably should have known that one of Mr. Ray's firearms was stolen [*see* Docs. 70, 83], but at the sentencing hearing, the government conceded that the defendant did not know or should not have reasonably known that at least one of the firearms was stolen. The Court therefore does not address application of § 2K2.1(b)(4).

### A. Possession of at Least Three Firearms

Section 2K2.1(b)(1)(A) provides that "[i]f the offense involved" three to seven firearms, increase by two levels. U.S. Sentencing Guidelines Manual § 2K2.1(b)(1)(A). The government maintains that the defendant knew or reasonably should have known that Mr. Ray possessed at least three firearms. In support of this position, the government presented the testimony of Special Agent Rebecca Bobich. Ms. Bobich's testimony demonstrated that the defendant admitted to seeing Mr. Ray with two firearms—a pistol and a revolver—when she was with him on the Florida trip. The defendant conceded this much during the August 13 hearing. The Court is thus left to determine whether the defendant knew Mr. Ray possessed a third firearm.

The Court finds that the evidence presented demonstrates that the defendant knew or reasonably should have known that Mr. Ray possessed a third firearm. First, she informed law enforcement officers that she knew that Mr. Ray usually kept a firearm in his possession. Second, she knew that Mr. Ray was running from authorities due to his conduct on April 28, which she admitted to having discussed with Mr. Ray and others before and during the course of the Florida trip.

Having determined that the defendant knew or reasonably should have known that Mr. Ray possessed at least three firearms, the underlying offense level is increased by two levels, resulting in an adjusted underlying offense level of 26.

7

### B. Use of Firearms in Connection with at Least One Felony Offense

Section 2K2.1(b)(6)(B) provides that if a firearm or ammunition was "[u]sed or possessed" "in connection with another felony offense," then the offense level should be increased by four levels. U.S. Sentencing Guidelines Manual § 2K2.1(b)(6)(B). The Court finds that it need not address whether the defendant knew or reasonably should have known that Mr. Ray used or possessed a firearm in connection with another felony offense because the current adjusted underlying offense level is 26 and subtracting six levels under § 2X3.1(a)(1) leaves the defendant with an underlying offense level of 20, the maximum base offense level under § 2X3.1 to which the defendant may be subjected.

Accordingly, for all the reasons explained, the Court finds the base offense level under § 2X3.1 is 20.

### III. Government's Sealed Motion for Third-Level Acceptance of Responsibility Reduction

The government filed a sealed motion for the third-level reduction for acceptance of responsibility, pursuant to § 3E1.1(b) of the Guidelines. After review of the motion and the record in this case, the Court hereby **GRANTS** the motion [Doc. 68].

### IV. Conclusion

In sum, the Court finds that the offense level for the underlying offense under § 2X3.1(a)(1) is 24 and that two levels should be added to this offense level because the defendant knew or should have known that Mr. Ray's offense involved three to seven firearms. This results in an underlying offense level of 26. Subtracting six levels under §

8

2X3.1(a)(1) leads to a base offense level of 20.  The base offense level is then reduced by three levels under § 3E1.1 because of the defendant's acceptance of responsibility, which produces a total offense level of 17.  With a criminal history category of IV, the defendant's resulting advisory Guidelines range is 37 to 46 months' imprisonment.

In light of the Court's findings, the Court hereby **DIRECTS** the probation officer to revise the PSR and distribute copies to the parties within three (3) days of entry of this order.  The sentencing hearing recessed on August 13, 2013, will resume at **3:30 p.m., on Monday, August 26, 2013**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

9

Case 3:12-cr-00124-TAV-CCS   Document 89   Filed 08/21/13   Page 9 of 9   PageID #: 297